UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHANIE BROOKS,

    Plaintiff,

    v.                                    CASE NO. 8:13-cv-1770-T-30MAP

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks review of the Commissioner's decision denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She alleges the ALJ erred by 1) failing to pose a complete hypothetical to the vocational expert; 2) failing to properly evaluate records from Dr. Nucci and Dr. Zehr; 3) failing to properly consider her impairments in combination; and 4) failing to properly consider her subjective complaints. After consideration, I recommend that the Plaintiff's complaint be dismissed, and the Commissioner's decision be affirmed.

*A. Background*

Plaintiff, born February 25, 1988, has a tenth grade education, and past relevant work experience as an activity assistant, cashier, and counter clerk. She alleges she became disabled afer a motor vehicle accident on June 22, 2009, due to back and neck pain and related problems with her legs giving out and going numb. Since the accident, the Plaintiff suffers from anxiety and depression, mostly related to driving. Plaintiff's claims were denied initially and upon

reconsideration. Thereafter, Plaintiff requested a hearing before an ALJ, and on March 7, 2012, the ALJ opined she was not disabled. Plaintiff filed a request for review, but the Appeals Council denied review. Thereafter, the Plaintiff exhausted her administrative remedies, and filed this action.[1]

*B. Standard of Review*

To be entitled to DIB or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions);

---

[2] The district judge referred this matter to me for a report and recommendation. *See* 28 U.S.C. § 636.

(3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

### C. Discussion

#### 1. ALJ hypothetical

Plaintiff argues that the ALJ's hypothetical to the vocational expert should have included

his findings that she has "moderate" difficulties in concentration, persistence, or pace. According to the Plaintiff, the ALJ's general limitation to "routine tasks" in his RFC finding failed to comply with SSR 96-8p and the regulations. The ALJ must pose an accurate hypothetical that takes into account all the claimant's impairments. *See Pendley v. Heckler,* 767 F.2d 1561 (11th Cir. 1985). The ALJ's hypothetical posed to a vocational expert must comprehensively describe the plaintiff's limitations. *See Id.* at 1563. Of course, the ALJ is not required to include limitations found not credible, and submits to the expert only those supported by objective evidence of record. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996), *McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987).

Here, the ALJ properly assessed the Plaintiff's residual functional capacity (RFC) and offered a detailed hypothetical to the VE. As the Commissioner set forth, the ALJ used the Plaintiff's psychiatric review technique (PRT) ratings to find at steps two and three that the Plaintiff had severe mental impairments, but did not have an impairment or combination of impairments that met or equaled a listed impairment. Hence, the ALJ needed to assess the Plaintiff's RFC. In assessing the Plaintiff's RFC, the ALJ found Plaintiff had the mental ability to perform sedentary work that was limited to routine tasks in an air conditioned environment. The ALJ's RFC finding and his hypothetical question to the VE sufficiently accounted for the PRT rating of "moderate" difficulties in maintaining concentration, persistence, or pace because the relevant medical evidence, that the ALJ adequately discussed, supports the ALJ's assessment of Plaintiff's mental limitations. Though the Plaintiff cites to *Millhouse v. Astrue*, 2009 WL 763740 (M.D. Fla. March 23, 2009) to buttress her assertion that the ALJ hypothetical is incomplete, *Millhouse* is distinguishable. In *Millhouse*, the two hypothetical questions posed to

4

the vocational expert failed to include the ALJ's RFC determination. Here, in contrast, the ALJ's hypothetical included appropriate limitations in his RFC finding and in the hypothetical to the VE. Moreover, following the Eleventh Circuit's precedent in *Winschel v. Commissioner*, I find that the ALJ adequately accounted for the Plaintiff's mental limitations, citing to her medical evidence and her activities of daily living (R. 16). *See Winschel v. Commissioner,* 631 F.3d 1176 (11th Cir. 2011). In *Winschel,* the Eleventh Circuit found that the ALJ, who at step two found the claimant's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace, erred by posing a hypothetical question to the VE that failed to include or otherwise implicitly account for his moderate limitation in maintaining concentration, persistence, and pace. *Winschel*, 631 at 1181. The court noted the ALJ did not indicate that the medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical. Consequently, the court concluded that the ALJ should have explicitly included the limitation in his hypothetical to the vocational expert. *Id.*

Here, unlike *Winschel,* the ALJ pointed to medical evidence from Dr. Zehr suggesting that although Plaintiff reports difficulty with concentration, upon exam she showed good recall of recent and remote events, suggesting no severe short-term or long-term memory impairment, a full range of appropriate affects, and did not appear to be in acute or mental distress (R. 16). The ALJ also discussed the opinions of Nancy Dinwoodie, M.D. who indicated Plaintiff had non-severe mental impairments secondary to mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace and no evidence of decompensation (R. 394). Giving the Plaintiff "the

benefit of the doubt," the ALJ found Plaintiff has a severe mental impairment and limited her to performing routine tasks in an air-conditioned environment (R. 22). Because the ALJ properly accounted for Plaintiff's limitations in social functioning and concentration, persistence, or pace by relying upon the medical evidence that established that Plaintiff is capable of routine tasks on a sustained basis, I find his hypothetical to the VE was accurate and his reliance upon the VE's testimony appropriate. Moreover, the ALJ's RFC finding that Plaintiff is capable of routine tasks with no further limitations is supported by substantial evidence. Accordingly, I find that the ALJ posed a proper hypothetical to the VE based upon the medical evidence and his RFC finding.

      2. opinion evidence

Plaintiff argues that the ALJ erred by failing to properly consider the opinion of Dr. Nucci, her treating physician, and Dr. Zehr, the consultative psychologist.

      a) Dr. Nucci

As to Dr. Nucci, the Plaintiff asserts the ALJ erred by failing to state with particularity the weight afforded to his opinions. However, as the Commissioner notes, Dr. Nucci did not form opinions about Plaintiff's ability to work, or impose any restrictions or limitations on her daily functioning. The ALJ adequately addressed Dr. Nucci's recommendation that Plaintiff needed lumbar endoscopic discectomies to repair L4/L5 and L5/S1. The ALJ discussed Dr. Nucci's opinion dated July 2010 that she was a candidate for back surgery, but would have to delay surgery until after her pregnancy and childbirth (R. 399). The ALJ noted that Dr. Nucci's assessment regarding surgery was inconsistent with the other medical evidence, including the assessment by Edward Jacobson, D.O. a consultant of her chiropractor, Dr. Chambers who opined she suffered only a 6% impairment, and the independent medical evaluation by Dr.

Lanby.  The ALJ also discussed that although the Plaintiff delivered her third child in January 2011, she did not seek medical treatment until June 2011 when she established care with family physician, Lori Spoor, D.O. for a urinary tract infection and chronic back pain.  At the initial consultation, Dr. Spoor prescribed Naprosyn and Flexeril, and referred Plaintiff to a pain management specialist (R. 407-409).  Dr. Spoor's office notes from Plaintiff's July 2011 visit indicates, as the ALJ acknowledged, that Plaintiff reported to Dr. Spoor that she had not yet consulted with a pain management doctor and was "not interested in surgery at this time."  The ALJ indicated his awareness about Plaintiff's lack of financial resources and health insurance, but also noted she did not seek treatment for back pain at the emergency room or elsewhere, diminishing her alleged complaints about back pain.  Dr. Spoor's next office note, dated October 26, 2011, indicates the reason for Plaintiff's visit as chronic urinary tract infection.  Plaintiff's exam was "negative" for musculoskeletal problems and physical exam revealed "normal range of motion" (R. 420-422).  However, she returned for regularly scheduled follow up appointments in December 2011 and again in January 2012, complaining that her back pain had increased (R. 425, 432).  Dr. Spoor referred Plaintiff for physical therapy, and directed Plaintiff to undergo an MRI, but the medical evidence does not show that she followed through with these recommendations.

     Against this evidentiary backdrop, the ALJ also noted that although Plaintiff testified at the administrative hearing that she could only sit for ten minutes before needing to change positions, she had already been sitting for 20 minutes and had not shifted in her seat when she described such limitations (R. 21).  The ALJ also discussed the state agency consultant, Dr. Junejo who opined that Plaintiff could occasionally lift and carry, including upward pulling, up

7

to twenty pounds, frequently lift and carry up to ten pounds, stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push or pull including operating hand or foot controls for an unlimited amount of time.

Upon consideration, I find no merit in Plaintiff's claim that the ALJ erred in considering Dr. Nucci's opinions. Plaintiff correctly asserts that the law of this circuit requires that the testimony of a treating physician be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Commissioner's regulations dictate a similar preference:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2). Of course, an ALJ may reject the opinion of any physician when the evidence, as a whole, supports a contrary conclusion. *Bloodsworth*, 703 F.2d at 1240 (citing *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981)). Here, Dr. Nucci did not render any opinions regarding Plaintiff's limitations or restrictions, and the ALJ properly considered his treatment notes and surgical recommendation. Though the ALJ may have passed judgment inappropriately about the relationship between Dr. Nucci and Plaintiff's personal injury attorney, I find that this harmless error. The ALJ properly considered the medical evidence including the evidence from Dr. Nucci, and his decision that Plaintiff is capable of performing a full range of sedentary work is supported by substantial evidence.

       *b) Dr. Zehr*

Plaintiff asserts the ALJ erred by failing to address Dr. Zehr's prognosis, specifically regarding her panic attacks. Dr. Zehr, a one-time psychology consultant, examined Plaintiff on November 23, 2010 (R. 380-382). Dr. Zehr described Plaintiff as "pleasant and cooperative though she appeared mildly anxious when beginning the evaluation." Dr. Zehr described Plaintiff's prognosis as "fair," noting she had a full range of appropriate affects and appeared in no acute mental distress. He recommended Plaintiff continue all medical appointments as needed, and would benefit from a referral for psychotherapy to address her anxiety and depressive symptoms. Dr. Zehr assigned a GAF of 65 and diagnosed adjustment disorder with mixed anxiety and depressed mood, and panic disorder with agoraphobia.

The ALJ thoroughly summarized Dr. Zehr's report as well as the other mental health evidence, and opined that Plaintiff has a "severe" mental impairment limiting her to performance of routine tasks in an air-conditioned environment (R. 22). As the Commissioner notes, the opinions of one-time examiners are not entitled to any special deference or consideration. *See* 20 C.F.R. §§404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2). Accordingly, I find the ALJ adequately considered Dr. Zehr's opinions, and that his decision is supported by substantial evidence.

   *3. Combination of impairments*

At steps two and three, the regulations demand the ALJ consider not just the disabling effect of each impairment but also the combined effect of all the impairments. *See* 20 C.F.R. § 404.1523; *Davis v. Halala,* 985 F.2d 528, 534 (11th Cir. 1993) (ALJ is to evaluate the "whole person"). Indeed, the Eleventh Circuit has repeatedly stated that an ALJ has the duty to consider the Plaintiff's physical and mental impairments in combination. *Swindle v. Sullivan*, 914 F.2d

222, 226 (11th Cir. 1990); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985). The ALJ must make specific and well-articulated findings to determine whether the combination of impairments are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001(11th Cir. 1987). Plaintiff contends the ALJ erred by failing to consider her chronic urinary tract infections, kidney stones, and resulting pain in combination with her other impairments.[2] Contrary to the Plaintiff's assertion, the ALJ discussed and considered the Plaintiff's diagnoses of kidney stones, recurrent urinary tract infections, and related pain (R. 20-21).

Here, the ALJ assessed Plaintiff's physical and mental impairments individually and in combination as required at step two. The ALJ stated that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments ... ." He discussed the Plaintiff's testimony and the medical evidence regarding her repeated urinary tract infections and kidney stones, and Dr. Spoor's recommendation that she have her gallbladder removed (R. 18, 20). The ALJ noted that the Plaintiff failed to follow through with Dr. Spoor's referral to a urologist. Morever, the Plaintiff has failed to present any evidence that these conditions caused any additional limitations than those already included in the ALJ's RFC. *See Sanchez v. Commissioner*, 507 Fed. Appx. 855, 859 (11th Cir. 2013).

    *4. Pain standard*

---

[2] The Plaintiff does not allege the ALJ erred by failing to find her chronic urinary tract infections, kidney stones, and gallbladder problems severe impairments. In any event, the evidence fails to show that these impairments significantly affected her ability to work for a consecutive twelve month period. 42 U.S.C. §423(d)(1)(A).

The Plaintiff asserts the ALJ erred by failing to properly discredit her complaints of back pain and her non-exertional impairments related to anxiety and depression.  In particular, the Plaintiff indicates the ALJ's credibility analysis is flawed because he should have considered that she was uninsured and could not afford to see specialists, and improperly concluded she was not in pain during the administrative hearing.

By considering all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence, the ALJ properly applied the Eleventh Circuit pain standard.  *See* 20 C.F.R. §§ 404.1529 and 416.929.  As required, the ALJ also considered whether Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, and reached his credibility determination accordingly based on consideration of the entire case record (R. 17).  Specifically, the ALJ considered Plaintiff's testimony about her anxiety, depression, urinary tract infections, and pain from her gallbladder and back (R. 18).   He also considered the medical evidence and Plaintiff's activities of daily living.  The ALJ opined she has objective findings that support some pain, discomfort and limitations, but not to the extent described by the Plaintiff.

Plaintiff takes issue with the ALJ's observations of her ability to sit without shifting her weight during the course of the administrative hearing.  It seems that Plaintiff accuses the ALJ of engaging in "sit and squirm" jurisprudence.  Admittedly, the Eleventh Circuit has reversed administrative decisions where the ALJ, who is not a medical expert, subjectively arrives at an index of traits expected to be manifested by the claimant at the hearing and denies the claim if the claimant falls short of that index.  *See Johns v. Bowen,* 821 F.2d 551, 556-557 (11th Cir.

1987); *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984); *Freeman v. Schweiker,* 681 F.2d 727, 731 (11th Cir. 1982). But the circuit has also recognized the ALJ's prerogative for assessing the claimant's credibility. *See Norris v. Heckler,* 760 F.2d 1154, 1157 (11th Cir. 1985) (rejecting "sit and squirm" argument because ALJ did not impose his observations in lieu of a consideration of the medical evidence). In short, the circuit does not prohibit an ALJ from evaluating the demeanor of a claimant or witness and reporting those observations in the decision. The critical inquiry for a reviewing court is whether the ALJ's evaluations are mirrored by what is in the medical record. *Id.* Having considered the administrative record, I find a reasonable person would accept as adequate the ALJ's grounds for rejecting the severity of symptoms Plaintiff reports. Moreover, although it is improper for an ALJ to rely on failure to obtain treatment or comply with treatment as the sole ground for denial of disability benefits without first determining whether the plaintiff is able to afford treatment, in this case the ALJ's decision to deny benefits was not based significantly on the Plaintiff's failure to obtain medical treatment. *See Dawkins v. Bowen*, 848 F.2d 1211, 1214 (11th Cir. 1988). Accordingly, I find the ALJ properly evaluated Plaintiff's pain and subjective complaints as required by the Eleventh Circuit and the applicable regulations.

For the foregoing reasons, it is hereby

RECOMMENDED:

1. The Plaintiff's complaint be dismissed, and the Commissioner's decision be

affirmed.

IT IS SO REPORTED at Tampa, Florida on February 12, 2015.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).


cc: Honorable James S. Moody